Reid *vs.* McLendon.

---

WILLIAM REID, plaintiff in error, *vs.* JESSE McLENDON, defendant in error.

This was an action on the case for damages alleged to have been suffered by the plaintiff in consequence of the seizure of his cotton in 1865 by the United States Treasury officials, which seizure, it was alleged, was

Reid *vs.* McLendon.

caused by an affidavit made by the defendant to the effect that plaintiff had subscribed that amount of cotton to the Confederate cotton loan, and had not paid the same, which affidavit, it was alleged, was untrue. It was in proof that the defendant had made the affidavit, and that the plaintiff had subscribed to the said loan, and had in fact fully paid it. It was further proven that the Treasury agents had seized the cotton, and that the proceeds had gone into the United States Treasury. There was also proof that the defendant, who was himself one of the sub-agents for collecting the cotton loan for the Confederacy, had some reason to believe, and did in fact believe, that the plaintiff had not paid his loan to the Confederacy. The Court was asked to charge that, if the plaintiff's cotton was seized by the Treasury agents in consequence of defendant's affidavit, and that said affidavit was untrue, he then was liable for plaintiff's damage; and that the measure of the damages was the value of the cotton, with additional damages as a punishment, if the proof showed malice on the part of the defendant. This charge the Court refused, and charged that, if the defendant acted in good faith, and made the affidavit on proper demand by the United States officials, honestly believing he was stating the truth, after proper caution and prudence on his part as to his means of information, he was not liable at all, even though he was mistaken in the statement that the loan had not been paid:

*Held*, That there was no material error in the charge, and the jury having found under the charge for the defendant, it was not error in the Court to refuse a new trial.

Action for special damages by words. Before Judge BIGBY. Troup Superior Court. May Term, 1871.

The necessary facts are in the head-note and opinion.

MABRY, TOOLE & SON; LONGLEY & HARRIS; WILLIAM DOUGHERTY, for plaintiff in error.

B. H. BIGHAM, (by THOMAS WHITAKER); FERRILL; HAMMOND & BROTHER, for defendant.

McCAY, Judge.

The sole point in this case is, whether the charge of the Court was right under the evidence. If the law was rightly declared to the jury there is evidence to sustain the verdict on either side according to the weight the jury may have

given to the facts as proven. If a man, under an honest mistake of facts, makes a statement which leads the government, or even an individual, to seize the property of a citizen, is the person making the statement responsible to the party injured for the value of the property seized ? As a matter of course, *he is liable* if he be in complicity with the seizure, if he take any part in it, if he aid or abet it ; in other words, if he be a joint trespasser. And this the Court told the jury ; but the Court further charged that, if the defendant below, on proper demand by the United States officers, in good faith made the affidavit, thinking it was true, after proper caution and prudence on his part as to his means of information, he was not liable at all, even though he was mistaken in the statement he actually did make. We do not think this charge error under the facts. There was a good deal of evidence going to show that the defendant had acted in good faith ; that he honestly believed William Reid had made the subscription, and that he had not paid it. That he made the subscription is not denied, and that he did not pay it promptly is not denied. The lists of unpaid subscription was sent to McLendon as late as 1863. It was *then* unpaid, and remained unpaid some time ; as McLendon testifies that he wrote to Reid more than once about it. That McLendon should, from these facts, conclude it was not paid is very natural. And his conduct after Reid told him it *was* paid goes to show that he was acting in good faith and under an honest conviction of the truth of his statements. There was evidence to justify the charge and sustain the verdict if the charge be law. And this brings us to the consideration of the main question : How far is one responsible who, in *good faith*, makes a statement which leads another to *commit a trespass* or to commence proceedings resulting in loss or damage to third persons ?

We are inclined to think this act of the Treasury agents was a *trespass* only defensible as other trespasses, by showing that they had a right to seize. In this issue, under the proof,

Reid *vs*. McLendon.

the Treasury agents were, as we understand the law, trespassers, since it is plain this was not, in any sense, Confederate cotton. The first inquiry, therefore, is, how far is one who, in good faith, makes a statement which is in fact untrue, but which leads another to *commit a trespass* by which loss or damage comes to a third party, liable. If the statement be made in *bad faith*, and with *intent* to incite the trespass, the teller of the untruth would perhaps be fairly classed as an abettor of the trespass, and be liable, since *all* in such a case are equally liable as principals. But this was not the case as put by the Judge. McLendon is supposed by the Judge to have acted, in the opinion of the jury, in good faith— thinking the statement true, and to have made it, not to incite the trespass, but in good faith, on proper demand made by the United States officials. We do not think one who honestly makes a statement he believes to be true is responsible for *a trespass* committed by one who is influenced to act by the statement, and we think it will be difficult to find any authority to sustain a doctrine different from this. See 12 Barbour, 657. In Vickers *vs*. Wilcox, 8 East., 1, Lord Ellenborough lays down, as a general principal, that in an action of slander special damage cannot be relied on, if that damage come from the illegal act of a third person, even though he be injured by the slander.

If there be no proof (as there was none in this case) that the defendant took part in the trespass; if the facts fail to show that he incited—willfully induced—the seizure; if, in other words, the trespass was only the *illegal* act of third persons, influenced by the statement of the defendant, we think the case in 8th East's Reports controls it. This, it is true, is not an action of slander of title, but it very closely analogizes itself to such an action. Indeed, as is well said by Mr. Townsend, section 130 in his work on slander: "The action for special damage to plaintiff's property, caused by the untrue words of the defendant, is not strictly an action of slander, but rather an action on the case for damages."

The case of Hamilton *vs.* Hunt, 14th Illinois, 472, draws the true distinction. There two persons had joined in the sale of a steer. One of them, by mistake, pointed out as the steer sold, a steer belonging to the plaintiff, and the purchaser, acting on this, took him and killed him. The Court held that, as the person pointing out the steer was one of the sellers, the pointing him out was but the consummation of the sale, and that he was, therefore, liable; but the Court, in that case, says: had the person pointing out the steer been a stranger, he would not, if he acted in good faith, be liable. And in this case, if McLendon was interested in the seizure, or if he, in bad faith, made this affidavit, with *intent to incite it,* he would be liable, for the plain reason that he would be a part actor in the trespass.

It is the well settled rule, that in all actions for special damage to personal property, caused by untrue statements, the proof must show malice on the part of the defendant: Hilliard on Torts, and the cases cited, 1st volume, 335. See also, 6th B. Monroe, 301; 3d Denio, 110. Thus far upon the assumption that the act of the treasury agents, in seizing this cotton, was a trespass. If it was a lawful act, that is, if they were clothed with legal authority, in this way to assert the claims of the United States, to cotton, said to be subject to confiscation, the case is stronger still for the defendant. We do not say that this was a regular, legal proceeding. It is somewhat doubtful, it is true, whether this State was then not under the dominion of the military possession assumed at the close of the war, though we incline to think to the contrary. But if this were so, then we think defendant is not liable, unless he acted in bad faith. His act was in aid of the Government. Public policy favors informers. It is, in fact, every man's duty to furnish to the Government, any information he may have touching its rights. And the law throws a shield over every man, who, in good faith, furnishes information, even though it be untrue in fact. Not even malice, alone, will render him liable. There must, in addi-

tion, be want of probable cause: 6th Blackford, 204, and Hilliard on Torts, 1st volume, 345. The charge in this case, required that the jury should be satisfied that this statement was not only made in good faith, but after due prudence, and this is the same thing as saying, there was probable cause.

Upon the whole, we think the charge upon this point right, and as the case turns upon it, and the evidence supports the verdict, we affirm the judgment.